STATE of Tennessee, Appellee,

v.

Gary STINNETT, Appellant.

Supreme Court of Tennessee,
at Knoxville.

Nov. 17, 1997.

F.D. Gibson, III, Maryville, for Appellant.

John Knox Walkup, Attorney General and Reporter, Michael E. Moore, Solicitor General, Gordon W. Smith, Associate Solicitor General, Nashville, Alfred C. Schmutzer, Jr., District Attorney General, G. Scott Green, Assistant District Attorney General, Sevierville, for Appellee.

## OPINION

BIRCH, Justice.

The defendant, Gary Stinnett, was tried on a charge of aggravated rape[1] of his stepdaughter.[2] A jury convicted him of aggravated sexual battery,[3] a lesser-included offense, and the trial court sentenced him to twelve years in the Department of Correction. On direct appeal, the Court of Criminal Appeals affirmed the conviction and reduced the defendant's sentence to ten years.

■ We granted Stinnett's application for permission to appeal in order to address a single issue:[4]

Whether the trial court erred in admitting, under Tenn. R. Evid. 803(4), out-of-court statements made by RM to two physicians.

■ For the reasons stated herein, we find that the State has introduced evidence sufficient to fulfill the admissibility requirements of Rule 803(4).[5] Accordingly, we conclude that the statements were properly admitted.

I

As stated, the original charge against the defendant was aggravated rape committed upon his six-year-old stepdaughter, RM. On October 7, 1990, RM was left in the defendant's care while her mother took RM's younger brother to the hospital for emergency treatment. While her mother was away, the defendant lured RM into his bedroom and undressed her. He penetrated her "front private part" with his finger, and he penetrated her with his "front private part [while] moving up and down." RM testified that this was painful and that she asked the defendant to stop. He threatened to kill her if she were to tell anyone what had occurred.

1. "Aggravated rape is unlawful sexual penetration of a victim by the defendant or the defendant by a victim" [who is] less than thirteen (13) years of age. Tenn.Code Ann. § 39–13–502(a)(4) (1991). This former subsection (a)(4) is now codified as § 39–13–522 (1996), Rape of a Child.

2. In cases involving sexually oriented crimes, the Court withholds the identities of young victims when appropriate. The victim will be referred to as RM in this case.

3. The aggravated sexual battery we are concerned with here is unlawful sexual contact with a victim by the defendant or the defendant by a victim who is less than thirteen years of age. Tenn.Code Ann. § 39–13–504(a)(1996).

4. While this appeal was pending, however, Stinnett filed a motion for supplemental review and challenged the validity of the indictment against him because it failed to charge a mental state. As we held in State v. Roger Dale Hill, Sr., 954 S.W.2d 725 (Tenn.1997), the failure to charge a mental state is not a jurisdictional defect so long as the indictment performs its essential purpose. Because the indictment sufficiently notified Stinnett and the court of the charges and protected him from additional jeopardy, the failure to include a mental state in the indictment did not, under the circumstances, deprive the trial court of jurisdiction.

5. Of course, the burden of introducing evidence sufficient to support a finding that the requirements of an evidence rule are satisfied remains on the proponent of evidence. See Tenn. R. Evid. 104(b).

In the days immediately following October 7, 1990, RM's mother became aware of RM's behavioral problems at school (i.e., lying, physical aggression, and stealing from her classmates). A counselor told her that RM exhibited "classic symptoms of abuse." On October 10, 1990, RM's mother confronted her and asked whether anyone had improperly touched her. RM promptly told her of the events of October 7, 1990. RM's mother immediately contacted local authorities and was referred to Sonia Polansky, an investigator for the Department of Human Services. Polansky interviewed RM and referred her to Jerry Bradley, M.D., for a physical examination.

On October 12, 1990, Bradley examined RM. According to Bradley, the purpose of the examination was to diagnose any injury and to provide any necessary treatment, psychological or otherwise. In giving a medical history, RM related the details of the defendant's sexual conduct toward her. Bradley then attempted a pelvic examination. When RM vigorously resisted this attempt, Bradley determined that such an examination at that time would cause undue stress and emotional trauma. He referred RM to Kristie Lynn, M.D., a pediatric gynecologist, for the examination.

On October 30, 1990, Lynn examined RM. As Bradley had done, she obtained a medical history from RM before performing the physical examination. Lynn testified that she avoided asking leading questions when obtaining the history. RM supplemented her verbal description of the abuse by drawing pictures. She related that the defendant had touched her with his penis and that he had digitally penetrated her vaginal and anal area. Lynn's findings on physical examination were consistent with RM's description of the sexual abuse.

Stinnett denied RM's allegations and presented an alibi defense. As stated, the jury convicted him of aggravated sexual battery.

## II

■ It is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of discre-

tion. *State v. Campbell,* 904 S.W.2d 608, 616 (Tenn.Crim.App.1995); *State v. Baker,* 785 S.W.2d 132, 134 (Tenn.Crim.App.1989). Rule 803(4) of the Tennessee Rules of Evidence is an exception to the rule against the admission of hearsay. It permits the admission of:

> Statements made for [the] purposes of medical diagnosis and treatment describing medical history; past or present symptoms, pain, or sensations; or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

The rationale justifying the exception is two-fold: (1) a statement made by a patient to a physician is presumptively trustworthy because a patient is strongly motivated to speak the truth in order to receive proper diagnosis and treatment; and (2) any statement upon which a physician will rely as a basis for diagnosis and treatment is also sufficiently reliable for consideration by a court of law. *State v. McLeod,* 937 S.W.2d 867, 870 (Tenn.1996); *see United States v. Renville,* 779 F.2d 430, 436 (8th Cir.1985); *United States v. Iron Shell,* 633 F.2d 77, 84 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *State v. Livingston,* 907 S.W.2d 392, 396 (Tenn. 1995).

■ As we stated in *State v. McLeod,* Tenn. R. Evid. 803(4) permits the admission of a statement describing medical history, past or present symptoms, pain, or sensations, when made for the purposes of diagnosis and treatment. A statement regarding the general character, cause, or source of the problem is also admissible if in addition to the above requirement, such statement is reasonably pertinent to diagnosis and treatment. *McLeod,* 937 S.W.2d at 870.

■ In *McLeod,* we found that if the declarant is a child, the court must look to all the circumstances surrounding the statement to determine whether the statement was made for the purposes of diagnosis and treatment and is thus admissible. In other words, the fact that the declarant is a child does not eliminate the rationale underlying the hearsay exception, and the test for admission is the same as that applied to a

statement made by an adult declarant. However, we emphasize the necessity of considering all the circumstances of a child's statement because the child's ability to articulate the reason for the statement may be affected by age or developmental maturity.

The facts in the instant case are similar to those in *McLeod*, and the dispositive issues identical.[6] A jury found McLeod guilty of the aggravated rape of his daughter. McLeod objected to the admission of the testimony of a pediatric resident who had taken a medical history from the victim and had conducted a physical examination. The victim identified McLeod as the perpetrator. The physician testified that both the history and the physical examination were necessary for purposes of "diagnosis and treatment." *Id.* at 872.

In the case consolidated with *McLeod*, a jury found James Young guilty of sexual battery for fondling his stepdaughter. Young objected to the testimony of a pediatrician who took a medical history and examined the victim one month after the allegations surfaced. The victim identified Young as the abuser while giving her medical history. However, in contrast to the physician in McLeod's case, the pediatrician testified that she conducted the examination for "evaluative" purposes. *Id.* at 873.

■ In resolving each case, we thoroughly examined all of the circumstances surrounding each child's statement. With respect to defendant McLeod, this examination convinced us that the trial judge did not abuse his discretion in admitting the statement because the victim had clearly made it for the purposes of diagnosis and treatment. By contrast, the circumstances of defendant Young's case strongly indicated that the victim's statement had not been made for the purposes of diagnosis and treatment; thus,

the evidence was insufficient to support its admission under Tenn. R. Evid. 803(4).[7] *Id.* at 872–73.

■ Courts should not presume that a statement made by a child to a medical service provider is inadmissible merely because there is little or no testimony by the child concerning motivation for making the statement. Rather, in making the determination under Tenn. R. Evid. 803(4), courts should consider the totality of the circumstances to determine whether a particular statement was made for the purposes of diagnosis and treatment. A statement improperly influenced by another, one made in response to suggestive or leading questions, or inspired by a custody battle or family feud deserves especially careful scrutiny because such statement may have been made for purposes other than diagnosis and treatment. *Id.* at 871.

■ We now consider the circumstances in the instant case. Stinnett contends that RM's statements are unreliable and therefore inadmissable. We find the following circumstances surrounding RM's statements to be significant. At the time the statements were made, RM was six-years-old and old enough to understand that the physician was examining her to determine whether there was injury or trauma and to treat her for such, if necessary. She used child-like terms in describing body parts and the sexual abuse to each physician. In addition, her statements to both physicians and her testimony at trial were internally and comparatively consistent in all pertinent respects. Further, she was examined immediately after the allegations were made and nearly four years prior to trial. Moreover, there is no indication that RM was motivated to be untruthful to the doctors. Accordingly, after

<hr />

6. In *McLeod*, this Court consolidated two cases, the first concerning defendant Carl Lee McLeod and the second concerning defendant James Young.

7. In *McLeod*, we quoted testimony of the doctors as to the purpose of the victim's statement. In both cases, the doctors' testimony as to the purpose for the statement was essentially undisputed, i.e., in each case, the defendant attacked the credibility of the doctor, but there was no evi-

dence of a custody dispute, improper questioning, etc. Our emphasis on the doctors' testimony should not be misinterpreted. A doctor's statement that the purpose of the declarant's statement was for diagnosis and treatment is not a magical one but should be weighed and considered in light of all the circumstances giving rise to the statement in order to determine admissibility under Tenn. R. Evid. 803(4).

consideration of the circumstances surrounding the making of RM's statements, we conclude that the statements made by RM were for the purposes of diagnosis and treatment and, therefore, satisfy the *McLeod* test for admissibility under Tenn. R. Evid. 803(4).

■ The defendant insists that even if RM's statements were generally admissible under Tenn. R. Evid. 803(4), her specific identification of him as the perpetrator was inadmissible because the statement was pertinent to diagnosis only. In *Livingston*, we held that "statements made to a physician identifying a perpetrator who is a member of the child's household may be reasonably pertinent to proper diagnosis and treatment of emotional and psychological injury."[8] In the instant case, each physician testified that the examination was for the purposes of diagnosis and treatment. The fact that the perpetrator was RM's stepfather, who resided in the same household, was pertinent to the diagnosis and treatment of an emotional or psychological injury suffered as a result of the abuse. This issue is without merit.

Accordingly, the victim's statements were properly admitted under Tenn. R. Evid. 803(4), and the judgment of the intermediate court is affirmed. Costs of this cause are taxed to Stinnett for which execution may issue if necessary.

ANDERSON, C.J., and DROWOTA and REID, JJ., concur.

WHITE, J., not participating.

8. 907 S.W.2d at 397; *see also State v. Rucker,* 847 S.W.2d 512, 518 (Tenn.Crim.App.1992). In *State v. Barone,* 852 S.W.2d 216 (Tenn.1993), we limited statements made for the purposes of diagnosis and treatment to those concerning physical conditions as distinguished from mental or psychological injuries. However, in *Livingston,* we acknowledged that a statement made by a child to a physician naming the perpetrator as a member of the child's household, was pertinent to the diagnosis and treatment of emotional and psychological injury.