**Donna J. COTTINGHAM**

v.

**William B. COTTINGHAM.**

Supreme Court of Tennessee,
at Nashville.

Oct. 6, 2005 Session.

May 25, 2006.

William B. Cottingham, Nashville, Tennessee, pro se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Stuart F. Wilson–Patton, Attorney General, for the Appellee–Plaintiff, Donna Cottingham, and the Appellee, State of Tennessee, Department of Human Services.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON and ADOLPHO A. BIRCH, JR., JJ., joined. CORNELIA A. CLARK, J., not participating.

We granted this appeal to determine the propriety of the defendant's criminal contempt convictions arising out of his failure to pay child support and alimony. We conclude that: 1) the defendant was denied the right to counsel; and 2) the evidence is insufficient to support the defendant's criminal contempt convictions for the failure to pay both child support and alimony. Accordingly, we reverse the judgment of the Court of Appeals. Due to the insufficiency of the evidence, the criminal contempt charges are dismissed.

Donna Cottingham ("Ms. Cottingham") and the defendant, William Brian Cottingham ("Mr. Cottingham"), were divorced by a final decree entered on August 26, 1996. The trial court found that Mr. Cottingham had an earning capacity of $75,000.00 per year and ordered him to pay $1,150.00 per month in child support for the couple's minor daughter and $600.00 per month in alimony for five years.

On December 16, 1997, Ms. Cottingham filed a petition requesting that the trial court reduce Mr. Cottingham's arrearage to judgment.[1] In turn, Mr. Cottingham petitioned the trial court to reduce his child support obligation. On March 11, 1998, the trial court found Mr. Cottingham to be $37,742.13 in arrears for failing to pay child support through February 1998,[2] reduced the child support to $594.00 per month, and ordered Mr. Cottingham to pay an additional $134.70 toward the arrearage and clerk's fees. In July 2001, the Cottinghams' daughter celebrated her eighteenth birthday.

On May 22, 2002, the Department of Human Services, acting on Ms. Cottingham's behalf, filed a petition requesting sanctions for criminal contempt and another judgment for child support arrearage.

The Department of Children Services also sought sanctions for criminal contempt based upon Mr. Cottingham's failure to pay alimony pursuant to the final decree of divorce as well as a judgment for amounts past due.

After a hearing, the trial court found Mr. Cottingham guilty of ten counts of criminal contempt for ten months that he failed to pay child support in any amount and seven counts of criminal contempt for each of the seven years that he failed to pay alimony. The trial court sentenced Mr. Cottingham to ten days of incarceration for each conviction to be served consecutively, for an effective sentence of 170 days in the county jail. The trial court also entered a judgment against Mr. Cottingham for an alimony arrearage of $36,000.00 and a child support arrearage of $37,117.69.

■ The Court of Appeals affirmed the judgment of the trial court. Mr. Cottingham sought review in this Court of his convictions for criminal contempt and has not sought review of the trial court's judgment for arrearages in child support and alimony. We granted review to consider the propriety of his convictions.[3]

1. Although Ms. Cottingham's petition was entitled "Petition to Show Cause," no order is contained in the record requiring Mr. Cottingham to show cause why he should not be found in contempt. *See* Tenn. R.Crim. P. 42(b). The trial court made no finding of contempt in its order reducing the arrearage to judgment.

2. This arrearage amount was stipulated by the parties. Although the record is unclear as to how the arrearage amount was calculated, the arrearage amount also includes $1,300.00 per month of pendente lite child support that the trial court had ordered Mr. Cottingham to pay from March 1996 through August 1996 and a prior judgment of arrearage totaling $20,592.13.

3. Mr. Cottingham also maintains that the trial court lacked subject matter jurisdiction over the criminal contempt charges for his failure to pay alimony because the petition for a show cause order was not filed until after the expiration of the five-year period in which he was ordered to pay alimony pursuant to the final decree of divorce. This issue is without merit. Tennessee Code Annotated section 29–9–102(3) (2000) confers broad authority upon courts to adjudicate criminal contempt actions arising out of the failure to comply with the court's order even though the obligations arising out of the order are not ongoing. *See, e.g., Storey v. Storey,* 835 S.W.2d 593, 599 (Tenn.Ct.App.1992) (describing criminal contempt as punishment for the " 'failure to comply with the prior orders of the court.' ") (quoting *Crabtree v. Crabtree,* 716 S.W.2d 923,

## ANALYSIS

### A. Right to Counsel

Mr. Cottingham was convicted of criminal contempt for failing to pay alimony and child support. He contends that the trial court violated his right to assistance of counsel under the United States and Tennessee Constitutions by failing to determine whether he knowingly and intelligently waived the right at the first day of the criminal contempt hearing on September 24, 2002. The State concedes error but maintains that Mr. Cottingham has waived the issue by failing to raise the constitutional aspect of the claim in the courts below.

■ Mr. Cottingham raised the general issue of his right to counsel during trial and in his motion for new trial. In the Court of Appeals, he cited to cases that discussed the constitutional aspect of his claim, although he did not specifically allege a violation of the Sixth Amendment of the United States Constitution and article I, section 9 of the Tennessee Constitution. We conclude that Mr. Cottingham properly preserved the issue of whether the trial court obtained a constitutionally valid waiver of his right to counsel. Accordingly, the issue is properly before this Court.

■ The Sixth and Fourteenth Amendments of the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a defendant the right to assistance of counsel.[4] *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Small*, 988 S.W.2d 671, 673 (Tenn.1999). Furthermore, the Sixth Amendment and the due process clause of the Fourteenth Amendment afford a defendant accused of criminal contempt the right to assistance of counsel. *Holt v. Virginia*, 381 U.S. 131, 136, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965); *Cooke v. United States*, 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767 (1925). A trial court must make an inquiry on the record to ensure that a defendant is knowingly and intelligently waiving his right to assistance of counsel. *Small*, 988 S.W.2d at 673; *see Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Mr. Cottingham appeared before the trial court during the September 24, 2002, hearing without counsel. The record does not reflect that the trial court made an inquiry on the record to ensure that Mr. Cottingham knowingly and intelligently waived his right to assistance of counsel at the hearing. *See Small*, 988 S.W.2d at 673. Mr. Cottingham was represented by counsel during the second day of the hearing on November 18, 2002. By that time, however, the State had completed the presentation of its proof. Therefore, we accept the State's concession and hold that Mr. Cottingham's constitutional right to assistance of counsel was violated.

■ Not all constitutional violations result in reversible error. *Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). The constitutional error is harmless if the prosecution proves beyond a reasonable doubt that the violation did not affect the verdict. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In most cases in which courts undertake a harmless error analysis, the error occurs at trial and has a readily identifiable scope. *Hol-*

925 (Tenn.Ct.App.1986)). Accordingly, Mr. Cottingham is not entitled to relief as to this issue.

4. The Sixth Amendment right to counsel is applicable to the states through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

loway v. Arkansas, 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Therefore, " 'the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury.' " Satterwhite, 486 U.S. at 256, 108 S.Ct. 1792 (quoting Holloway, 435 U.S. at 490, 98 S.Ct. 1173). The United States Supreme Court has recognized that the majority of constitutional errors are subject to harmless error review. Arizona v. Fulminante, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

■ Some constitutional violations, however, are not subject to harmless error review but require automatic reversal. These "structural" errors relate to defects in the "trial mechanism" and "transcend[ ] the criminal process." Id. at 309–11, 111 S.Ct. 1246. Structural defects affect the framework of the trial from beginning to end and are not simply errors in the trial process. Id. at 310, 111 S.Ct. 1246.

■ Sixth Amendment right to counsel violations are structural defects when "the deprivation of the right to counsel affect[s]—and contaminate[s]—the entire criminal proceeding." Satterwhite, 486 U.S. at 257, 108 S.Ct. 1792; see, e.g., Penson v. Ohio, 488 U.S. 75, 88–89, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (complete denial of counsel on direct appeal); White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (absence of counsel from preliminary hearing where guilty plea was later admitted at trial); Gideon v. Wainwright, 372 U.S. 335, 345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (total deprivation of right to counsel); Hamilton v. Alabama, 368 U.S. 52, 54–55, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (absence of counsel from arraignment where defenses not asserted were irretrievably lost). Right to counsel violations that do not affect the entire proceeding are subject to harmless error review. See, e.g., Satterwhite, 486

U.S. at 258, 108 S.Ct. 1792 (admission of psychiatric testimony at capital sentencing hearing obtained in violation of Sixth Amendment); Moore v. Illinois, 434 U.S. 220, 232, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (admission of pretrial, corporeal identification made without counsel present); Coleman v. Alabama, 399 U.S. 1, 9–10, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (absence of counsel at preliminary hearing but prosecution prohibited from using anything that occurred at hearing at trial).

■ The harm caused by the right to counsel violation in the present case, however, was not limited to the erroneous admission of specific evidence at trial. Cf. Satterwhite, 486 U.S. at 257–58, 108 S.Ct. 1792. Rather, Mr. Cottingham was denied counsel throughout the prosecution's case in chief, and this denial affected the entire criminal proceeding. Cf. Vines v. United States, 28 F.3d 1123, 1128–29 (11th Cir. 1994) (holding that the absence of counsel during the taking of non-inculpatory testimony is subject to harmless error review). Any examination of a harmless error claim in this case would require "unguided speculation." Holloway, 435 U.S. at 491, 98 S.Ct. 1173. Therefore, we conclude that the violation of Mr. Cottingham's right to counsel is a structural error requiring automatic reversal.

## B. Sufficiency of the Evidence Criminal Contempt

■ Although we have concluded that this case should be reversed due to violation of Mr. Cottingham's right to counsel, we must determine whether the constitutional provisions against double jeopardy require that the criminal contempt case be dismissed. See State v. Hutcherson, 790 S.W.2d 532, 534–35 (Tenn.1990). Mr. Cottingham maintains that the trial court erred in denying his "Motion for Judgment of Acquittal" filed on the first day of the hearing after the

prosecution presented its case in chief. Mr. Cottingham waived the issue when he presented evidence on his own behalf at trial. *See State v. Ball,* 973 S.W.2d 288, 292 (Tenn.Crim.App.1998). The standard the trial court employs to determine a motion for judgment of acquittal at the end of the proof is the same standard applied on appeal to determine the sufficiency of the evidence after a conviction. *State v. Thompson,* 88 S.W.3d 611, 614–15 (Tenn. Crim.App.2000). Because Mr. Cottingham has properly raised the issue of the sufficiency of the evidence for his convictions of criminal contempt, we shall address Mr. Cottingham's arguments as a challenge to the sufficiency of the evidence.

When the sufficiency of the evidence is challenged, our standard of review is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R.App. P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Black v. Blount,* 938 S.W.2d 394, 399 (Tenn.1996). The prosecution is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it. *State v. Davidson,* 121 S.W.3d 600, 614 (Tenn.2003). Questions regarding the credibility of witnesses, the weight and value of the evidence, and any factual issues raised by the evidence are resolved by the trier of fact. *Id.*

The willful disobedience of "any lawful writ, process, order, rule, decree, or command" is punishable as criminal contempt. Tenn.Code Ann. § 29–9–102(3) (2000).[5] Under these circumstances, punishment for criminal contempt includes a maximum sentence of ten days of confinement and a maximum fine of $50.00. Tenn.Code Ann. § 29–9–103 (2000). A defendant accused of criminal contempt is presumed to be innocent. *Shiflet v. State,* 217 Tenn. 690, 400 S.W.2d 542, 544 (1966). The prosecution bears the burden of proving guilt beyond a reasonable doubt. *Id.*

To support a finding of contempt, the prosecution was required to prove beyond a reasonable doubt that Mr. Cottingham had the ability to pay support at the time it was due and that his failure to pay was willful. *See Ahern v. Ahern,* 15 S.W.3d 73, 79 (Tenn.2000). Mr. Cottingham contends that even when the evidence is viewed in a light most favorable to the prosecution, such evidence is insufficient to support the criminal contempt convictions. We agree.

The trial court found Mr. Cottingham in criminal contempt for failing to pay any child support in December of 1998; February, May, July, October, and December of 1999; January, February, and March of 2000; December of 2001; and January and March of 2002.[6] The trial court convicted Mr. Cottingham of seven additional counts of criminal contempt for each of the seven years that he failed to pay any alimony. The trial court made no

---

5. Tennessee Code Annotated section 29–9–102 (2000) provides in part:

 The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

 . . . .

 (3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts[.]

6. The trial court found Mr. Cottingham guilty of twelve counts of criminal contempt for his failure to pay child support. The trial court further found that Mr. Cottingham overpaid child support during two months. As a result, the trial court entered judgments for only ten of the twelve counts of criminal contempt. We express no opinion as to the propriety of this computation.

finding that Mr. Cottingham had the ability to pay the support at the time that it was due. *See id.* Although the evidence presented at trial sufficiently establishes that Mr. Cottingham failed to pay child support on the dates in question and failed to pay alimony in any amount, the evidence is insufficient to prove that Mr. Cottingham had the ability to pay these amounts at the time that they were due or that the failure to pay was willful.

At the time that the decree was entered in August 1996, Mr. Cottingham was a successful freelance radio and television producer earning $75,000.00 per year. In the years following the divorce, however, Mr. Cottingham earned considerably less than $75,000.00 per year. Mr. Cottingham's unrefuted testimony was that his decline in income resulted from the decline in the demand for freelance radio and television producers. Mr. Cottingham detailed the continuous efforts he made to obtain employment with more compensation. He performed several minimum-wage jobs while continuing his career in the radio and television industry. Mr. Cottingham testified that his ability to obtain a high-paying job was hindered by his lack of a college degree. He stated that his financial situation would have worsened if he had spent an additional twenty hours a week working at another minimum-wage job rather than creating more profitable proposals for freelance television and radio projects. When he did find well-compensated employment, he used all of his income in excess of his basic expenses to pay his child support obligations. The record is insufficient for any rational trier of fact to find beyond a reasonable doubt that Mr.

Cottingham's failure to pay child support was willful or that he had the ability to pay child support in the amount ordered at the time the support was due.

 With regard to Mr. Cottingham's failure to pay alimony, the evidence establishes that he allocated all of his income to child support after paying his basic living expenses. Mr. Cottingham had no money left to pay alimony. The record is devoid of any evidence that Mr. Cottingham had the ability to make the alimony payments at the time that they were due.

 Accordingly, we hold that the evidence is insufficient to support the convictions for criminal contempt. The constitutional provisions against double jeopardy require that the criminal contempt charges be dismissed. *See Hutcherson,* 790 S.W.2d at 534–35.[7]

### CONCLUSION

We conclude that 1) Mr. Cottingham was denied the right to counsel; and 2) the evidence is insufficient to support Mr. Cottingham's criminal contempt convictions. Accordingly, we reverse the judgment of the Court of Appeals. Due to the insufficiency of the evidence, the criminal contempt charges are dismissed.

Costs of appeal are taxed to the appellee, Donna Cottingham, and her surety, for which execution may issue if necessary.

CORNELIA A. CLARK, J., not participating.

---

7. Mr. Cottingham *also raised issues regarding his right to a verbatim transcript of the preliminary proceedings and the first day of trial, the sufficiency of the notice, his right against self-incrimination, the combination of the criminal contempt charges and the civil arrearage claim in the same proceeding, the* admission of hearsay evidence at trial, the contract between the prosecuting attorney and the State to prosecute the criminal contempt charges, and the imposition of consecutive sentences. We do not reach these issues in light of our holding and the dismissal of the criminal contempt charges.